The Coükt thereupon delivered the following decree:
The complainant files this bill, as entitled to the real estate of the late William White, against the administrators of the said White, to have the benefit of a contract made in writing by Mr. White, in his lifetime, with Mr. Hobbs, a carpenter, by which Mr. Hobbs engaged to build a house and out buildings, for the said Mr. White, on a lot of land belonging to him, for which he engaged to pay Mr. Hobbs the sum of 80 Ot. of which sum he advanced 5001. to the said Hobbs.
The bill sets forth the existence of the contract above-mentioned, and then charges that the administrators soon after the death of Mr. White, (which took place soon after he had entered into the contract,) not adverting to the distinct interests of the persons who might be entitled to the real estate, and of those who might be entitled to the personal estate, had cancelled the contract with Mr. Hobbs, paying him a small sum for labor and expense incurx*ed by him in commencing the work $ and the bill prays for payment of the sum of money which would have been expended in the erection of said buildings according to the contract, with interest thereon, or such other relief as may be proper.
The answer admits that Mr. White did enter into such contract as is stated in the bill, and that it was cancel-led in the manner related ; and submits to the Court *111 ■whether the complainant is entitled to have a compensation out of the personal estate.
No testimony was produced on the trial. The' complainant relied on the admission of the defendants, as to the formation and terms of the agreement $ and as to the existence of it in full force at the death of Mr. White, and of its being cancelled by the administrators after Ms death.
The counsel for the defendants (supporting the interests of the persons entitled to the personal estate,) insisted that this admission by the administrators was not a sufficient foundation to establish the agreement, for that the admission of the administrators could not bind the persons entitled to the personal estate.
I cannot however discern in what respect this question differs from others that occur daily in the transactions of administrators. There is scarcely a cause depending in this Court against administrators, in which they do not in their answers admit .some of the facts charged ; and these admissions in those cases as well as in this, operate as far as they go to charge the personal estate to the prejudice of those entitled ultimately to it. They are the legal representatives authorised to settle the affairs of the personal estate legally, and the persons entitled to it, are entitled to no more than the clear residue after payment of debts. If indeed they make false admissions to the prejudice of the estate, they do it at their peril, and could be made answerable therefor. And it would he the hardest case imaginable, if the complainant could not have the benefit of this admission. For the administrators having under a mistaken idea cancel-led and destroyed the evidence of the contract of which the complainant claims the benefit, and to the use of which he would have been entitled, in order to support his claim, had it not been destroyed, would be stript by this objection of the only means of establishing the facts, upon which his claim rests ; without any default on his part, and by the act of the defendants. This *112 would be too mischievous in its effects to be allowed to ProvaiL
It is further insisted by the defendant’s counsel that even pTant the admission to be valid, it does not state ° . . . with sumcient precision the nature and terms of the agreement, to enable the Court to form a correct opinion of it, and to ground a decree for relief; and that the Court will not presume any thing in favor of the complainant who comes in by fortuitous events, to the enjoyment of the real estate, to which he was not otherwise entitled.
With respeect to the mode in which the complainant becomes entitled to the real estate the Court has nothing to do with that. The law of the land gives it to him, and he is entitled to all the advantages of it.
It does not appear that there is occasion for much, or indeed any presumptions in the case. The agreement for building a house of a particular description, with the ordinary out buildings at a stipulated price is distinctly charged to have been made in writing, and this is as distinctly admitted. No presumption seems wanting. If it had, the Court would have been inclined to have made them in favor of a complainant, who has been deprived of the benefit of the written contract, by the act of the defendants. The Court will go very far in presuming against those who destroy papers and instruments necessary to the security or elucidation of the rights of others, in odium, spoliatoris, as it is expressed. I do not apply that phrase to these defendants : they are good men, who acted unadvisedly, and. not wilfully wrong •, but the effects of that error are the same to the complainant. And he would be entitled to the benefit of all the presumptions which could. reasonably be raised out of the circumstances for Ms benefit.
It is further contended that the contract might not' have been of a nature capable of being carried into specific execution 5 or that the parties might not have been willing or able to comply with it, and that in any of these cases the complainant is not entitled to the relief lie *113 claims. It appears to me that the contract as charged and admitted, was sufficiently precise and exact to have enabled either party to have enforced a specific execution ; and the Court cannot speculate upon what the parties, Mr. White and Mr. Hobbs, might afterwards have been able or willing to do. The natural and the legal presumption is that men are able and willing to do what they have contracted to do, and he who alleges the contrary, must prove his allegation.
It is insisted further that the administrators either had a right to cancel the agreement, or they had not. If they had, that there would be an end of the complainant’s claim. If they had not, in that case, what they did was a nullity ,* and a suit may yet be brought for the completion of the contract. In my opinion they had no right to rescind this contract, and so to vary the rights of the different claimants of Mr. White’s estate. If they had no right then of what use would it be to any party to bring a suit for the completion of it at this time. Suppose it done, the administrators would be bound to pay for the house out of the personal estate. I cannot turn the parties round in that manner.
Having cleared the case of all the difficulties raised by the ingenuity of counsel, we come now to the question of law. Is this a covenant running with the land, Which ought to go to the benefit of the person who becomes entitled to the land by the operation of law ?
In considering this question it was properly asked by the counsel for the complainant, suppose the administrators and the carpenter had gone on with the contract, and completed the work, and paid for it, to whose use would the improvements on the lot have enured ? Surely to the person who was entitled to the land.
In arguing the question of law the counsel for the defendants likened this caseto those in England where the heir is favored ; but insisted that the later cases do not favor the heir even in England, as much as fomerly ; and that the reason and policy for favoring the heir at law do not exist in this country as in England. That *114 in fact as our laws now stand, there is no such person known as an heir at law who can be favored.
It is unnecessary to examine particularly in this case, the general effect of the alteration made by the present laws upon the rights of those formerly denominated heirs at law. But surely those to whom the act for the division of real estates, allots the real estate, call them by what name you will, must have many, if not all, the rights attached to or connected with the land, to which they become entitled $ and the precise question here is, whether the party to whom the law'has given the land, is entitled to the benefit of a contract made by the former owner of the land, which would have improved it, and encreased its value, and which he left in full force at his death.
I have considered this question with attention, and I have examined the cases cited with care.
It appears to me that the counsel for the defendant has misapprehended the question made, in most of the cases he has cited, or has misapplied the cases. Upon a review of most of them it will be found that they are cases of devisees of money to be laid out in land, and the land given to a particular person. But the person for whom the land is so directed to be purchased, dies before the purchase is made. The question made in those cases is, whether the heir of the person so dying, or his executor is entitled to the money, or the benefit intended by the purchase. And this question has been decided differently according to the infinitely various circumstances of these cases. . But that is not the question in the case under consideration. I have stated a-bov.e what I conceive to be the true question, and do not think there is room for doubt, either on principle, or on the authority of decided cases.
On principle the question stands thus : Mr. White made a contract with Mr. Hobbs, to build a house for him on one of his lots, and he agrees to pay 800Z. for the buildings, of which sum he advances a part. He dies immediately after, leaving the contract in ¿full *115 force. It was a contract of which either party could have compelled the other to the specific execution*
There is no evidence that either party had intended to cancel the contract, and the Court cannot presume it.^ ... ,. .. . , , . It it had been canned into execution, it would have improved and enhanced the value of the real estate 5 and-the person to whom the law has given- the land would have had the benefit of it. The administrators had no right to vary the position or the interests of the parties. Mr. Hobbs on building the house would have been entitled to payment according to the contract. From whom ? Of course from the administrators, who had in their hands the personal estate, which still remains at least the primary fund for the payment of debts, notwithstanding all the alterations made by our laws. Shall the unauthorised and unadvised act of the administrators deprive the owner of the land of the benefit of the contract ? Surely not. ■ I think therefore on principle he is entitled to it, and it is immaterial to the defendants whether the house was. built and the money paid to Hobbs, or the money be paid directly to the owner of the land, who would have had the house with it, if built. And there are cases directly in point to this question. I shall cite but one. It is the case of Whitaker and Whitaker, in 4 Brown’s Chan. cas. p. SI. In that case a testator contracted for a pai’ticular estate, but dies before the purchase was completed ; afterwards from the state of his affairs the contract is dissolved. Yet the purchase money shall not sink into his personal estate, but be laid out in other lands, to the same uses as he had devised the land contracted for. So here the dissolution of the contract, after the death of the con-' tractor, cannot alter the right of the party to whom the land goes ; and it appears to me immaterial whether the land contracted to be purchased or improved is devised or descends according to law. In either case the devi-see or person entitled by law to the land must have the benefit of the contract; and the sum agreed to be laid out in land, or in building on land, shall not sink into *116 the personal estate, but be expended as contracted to be done, or go to the person who would have been, entitled to the improvement on the land.
cei^a*nty *s n°t a new principle, though few cases have been decided in this country. "We are not however without some lights upon the question, even here. In the case of J. R. Pringle and wife vs. the executors of Gen. M’Phcrson, this very point was before the Court, and though there was not an elaborate argument, the question was distinctly submitted to the Court, and decided as I now decide in this case.
It is therefore ordered and decreed that the administrators of Mr. White do pay to the complainant the sum of 8001. which was contracted to be paid by him to Mr. Hobbs for putting up a dwelling house and out buildings. As to the interest, I think that follows clearly the fate of the principal. Let interest be paid at the end of two years from the death of Mr. White. Costs to be paid out of the estate of Mr. White generally.